UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GREGORY BILLIOT | CIVIL ACTION |
| VERSUS | NO. 19-449 |
| TRIPLE MARINE, LLC | SECTION "S" (2) |

**ORDER AND REASONS ON MOTION**

Cursory review of the pending motion indicates that it presents nothing more than a passing afternoon thunderstorm in a tiny teapot. No matter which of the two competing procedures proposed by the parties is adopted, the ultimate result will be the same: defendant will obtain authorizations executed by plaintiff enabling it to collect all of plaintiff's relevant medical records. The temptation is great simply to choose the easiest route; i.e., adopt the approach approved by three of my respected colleagues in the reported decisions cited by defendant and grant the motion. However, those decisions – while not clearly erroneous – are neither binding Circuit precedent nor particularly persuasive. I choose, instead, the procedure proposed by plaintiff, which more accurately reflects both the purpose of Congress in legislatively protecting a medical patient's privacy interests in his own medical records and the literal scope of permissible discovery contained in Fed. R. Civ. P. 26(b)(1).

This is a marine personal injury case in which plaintiff's relevant physical conditions and related – though perhaps not all of his – medical records and history are clearly relevant. In its Request for Production No. 22, defendant asked plaintiff to sign

and produce authorization forms for the release of his medical records to defendant, but without specifying the medical care providers to whom the authorization forms would be submitted. Plaintiff responded by producing only executed authorization forms with the names of certain medical facilities or providers included on the forms.

Defendant has now filed a "Motion to Compel Blank Medical Authorizations," Record Doc. No. 8, in which it seeks an order requiring plaintiff to sign and provide it with numerous medical records authorization forms signed in blank with no reference to the medical care provider to whom it will ultimately be submitted. In his written opposition, Record Doc. No. 9 at p. 1, plaintiff states that he "does not object to providing medical authorizations to Defendant" but "maintains that the authorizations should be executed in accordance with HIPPA," the federal statute and related regulations conferring patients with privacy rights in their medical records maintained by healthcare providers and restricting the manner in which they may be released to and received by third parties like defendant. "Plaintiff has agreed to provide any and all requested authorizations within twenty-four (24) hours of Defendant's request," as long as they specify the healthcare provider to whom they are being sent, as required by the applicable HIPPA regulations. Id.

The authority of a federal court, as part of the records request and production process under Fed. R. Civ. P. 34, to require a party to execute forms authorizing the

2

release of relevant records in the actual possession of another is unquestioned. Lishka v. Tidewater Servs., Inc., 1997 WL 27066, *2 (E.D. La. Jan. 22, 1997)(Vance, J.) and cases cited therein. Defendant has accurately cited the opinions of three other much-respected magistrate judges for their holdings compelling the production of blank records release authorization forms of the type it seeks here. PBC Management, Inc. v. Roberson, C.A. No. 10-798 "F"(3), Record Doc. No. 40 at p. 2 (Aug. 8, 2010)(Knowles, M.J.) (citing Sinegal v. La. Workers Comp. Corp., 2008 WL 4862038, *3 (W.D. La. Nov. 7, 2008)(Methvin, M.J.); Thai v. Miller Truck Lines, Inc., 2006 WL 2349606, *1 (W.D. La. Aug. 11, 2006)(Hornsby, M.J.)). However, none of these decisions address the impact on such requests of (a) the important privacy concerns recognized by Congress and contained in HIPPA and its effectuating federal regulations or (b) the precise discovery standard contained in Fed. R. Civ. P. 26(b)(1).

"'One of Congress's objectives in enacting HIPPA was to address concerns about the confidentiality of patients' individually identifiable health information.' . . . Accordingly, Congress specifically authorized the Secretary [of the United States Department of Health and Human Services] 'to promulgate privacy regulations addressing individuals' rights to individually identifiable health information, procedures for exercising such rights, and the uses and disclosure of such information.' . . . In turn, the Secretary promulgated comprehensive privacy and disclosure regulations. . . ."

Murphy v. Dulay, 768 F.3d 1360, 1368 (11th Cir. 2014)(quoting OPIS Management Resources, LLC v. Secretary, Florida Agency for Health Care Admin., 713 F.3d 1291, 1294 (11the Cir. 2013)).

One of the "procedures for exercising" individual privacy rights contained in the HIPPA regulations commits to the individual patient the option of authorizing release of his own medical information "in a valid authorization form." Murphy, 768 F.3d at 1369 (citing 45 C.F.R. §§ 164.502(a)(1)(iv) and 164.508). "The HIPPA regulations specify that, to be valid, an authorization must contain, among other things, (1) '[a] description of the information to be used or disclosed that identifies the information in a specific and meaningful fashion'; (2) '[t]he name or other specific identification of the person(s), or class of persons, authorized to make the requested use or disclosure'; [and] (3) '[t]he name or other specific identification of the person(s), or class of persons, to whom the covered entity may make the requested . . . disclosure' . . . ." Murphy, 768 F.3d at 1370 (quoting 45 C.F.R. § 164.508(c)(1)(i)-(iii) (emphasis added)). One purpose of these requirements is to give the patient adequate notice of the request, including by identifying from whom his information has been requested. Id. at 1369 (citing 45 C.F.R. § 164.512(e)(1)(ii)).

The blank forms defendant asks plaintiff to sign in this instance fail both to specify the medical provider from whom his information is being obtained and, in that regard,

4

to provide the specific notice required by the regulation. Thus, defendant in effect requests that the court require plaintiff to produce to defendant documents that would be nullities and legally invalid at the time of their production. See Riley v. Methodist Healthcare Memphis Hospitals, 731 Fed.App'x 481 (6th Cir. 2018) (medical authorization forms that left blank four lines that should have specifically identified the medical care provider from whom records release was requested held invalid as not HIPPA compliant).

One justification proffered by defendant in support of its request is its own convenience; i.e., that it "should not be required to return to plaintiff for a new authorization each time a note in a medical record reveals another facility of treating physician whose records may be relevant." Record Doc. No. 8-1 at p. 4 (quoting Sinegal, 2008 WL 4862038, at *4). I find that the infinitesimal inconvenience to defendant of the procedure I impose herein is a small price to pay to vindicate the more important interest legislatively expressed by Congress: a person's medical records are private and should only be released in accordance with requirements enacted to guarantee that the individual patient knows exactly the extent to which he is relinquishing his privacy rights when he authorizes release of his medical records.

As to the scope of permissible discovery, Fed. R. Civ. P. 26(b)(1) limits discoverable information and materials to what is "relevant to any party's claim or

defense and proportional to the needs of the case. . . ." Plaintiff's claim in this case is that defendant's negligence resulted in an accident in which plaintiff "suffered severe and disabling injuries to his neck, shoulders and knee." Record Doc. No. 1 (Complaint at ¶¶ VI and VII). Defendant describes its defenses as including that "plaintiff has a long history of injuries, incidents, and medical complications that may provide . . . a basis to assert a defense pursuant to McCorpern v. Gulf Central S.S. Corp. [in that plaintiff] failed to disclose important medical information . . . on his employment application including information that he has previously undergone surgeries to his hand and knee and suffered a prior neck injury." Record Doc. No. 8-1 at p. 4. Its answer specifically asserts that plaintiff's injuries and damages were not caused by the alleged accident but "are the result of pre-existing conditions of plaintiff which predated his employment" by defendant. Record Doc. No 5 (Answer at p. 5, Ninth Defense). Certainly, broad-ranging discovery of plaintiff's medical records is appropriate in this case under Rule 26(b)(1).

However, unlimited discovery all of plaintiff's medical records of the type inherent in a request for blank medical authorizations, especially when one basis for that request is defendant's self-interested unwillingness "to return to plaintiff for a new authorization each time a note in a medical record reveals another facility or treating physician," may include some that are neither relevant nor proportional. For example, some "note in a medical record [may] reveal[]" that plaintiff once underwent an

unremarkable and completely successful tonsillectomy or vasectomy, or suffered some other condition such as diverticulitis, seemingly unrelated to the asserted claims and defenses, with no resulting complications. The basic processes of Fed. R. Civ. P. 34(b) dictate that plaintiff should first have an opportunity to object to production jud of such documents on relevance and/or proportionality grounds <u>before</u> a previously executed blank authorization form is submitted to a medical care provider and well before responsive materials are produced to defendant.

For all of the foregoing reasons, defendant's motion is DENIED, subject to the following: IT IS ORDERED that, no later than 24 hours after receipt by plaintiff of a medical records release authorization form, fully completed as required by HIPPA regulations, including identifying the medical care provider or facility from whom defendant will obtain records, plaintiff must either (a) sign and return the executed form to defendant's counsel, or (b) specifically assert any objection he may have on relevance or proportionality grounds to production of the requested materials.

New Orleans, Louisiana, this \_\_\_19th\_\_\_ day of June, 2019.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE